**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 13-22265-CIV-WILLIAMS/GOODMAN**

ROGER BONNELL, et al.,

      Plaintiffs,

v.

CARNIVAL CORPORATION,

      Defendant.

_____/

**ORDER ON PLAINTIFFS' MOTION TO COMPEL**

      "I'm living in the material world
      Living in the material world

      Can't say what I'm doing here
      But I hope to see much clearer,
      After living in the material world"

      -   George Harrison[1]

This discovery dispute is all about material. But the material world at issue here is not about the type of material which George Harrison sang about. Instead, the material in the discovery world at issue here is flooring surface material.

Turning from George Harrison's musical view of what constitutes a material world to the specific procedural developments concerning floor surface material, the

---

[1]      From the "Living in the Material World" album (Apple 1973).

District Court referred to the Undersigned Plaintiffs' motion to compel written discovery. [ECF Nos. 14; 15; 21]. The Undersigned has reviewed the relevant portions of the record and held a discovery hearing on the motion on January 10, 2014. [ECF No. 39]. For the reasons explained below, the Undersigned hereby **grants in part and denies in part** Plaintiffs' motion.

I.      BACKGROUND

  A.  Factual Background

Materials -- specifically flooring surface materials -- are at the heart of this case and the instant discovery dispute.

Roger, Mari, and Phoenix Bonnell ("Plaintiffs") were passengers on the Carnival *Pride*, a cruise ship which had departed from Baltimore, Maryland for a Caribbean cruise. [ECF No. 21, p. 2]. On September 11, 2012, while on the cruise, Phoenix (who is a minor child) slipped and fractured his femur while playing ping pong with his cousin on the *Pride*'s Lido deck. [ECF Nos. 1, pp. 5-6; 21, p. 2].

According to Plaintiffs, the part of the Lido deck on which Phoenix slipped and injured himself was surfaced with resin decking materials manufactured by an Italian design firm named API. [ECF No. 21, p. 1]. The API surfaces, which Carnival installed on the *Pride* and on other ships in its fleet, can be produced in various colors and designs. [ECF Nos. 1, pp. 4-5; 21, pp. 1-2]. Plaintiffs, however, claim that the API surfaces become unreasonably slippery when wet and were therefore unsuitable for use

on the *Pride*'s Lido deck -- an area which includes swimming pools and spas and which is exposed to rain and other elements. [ECF Nos. 1, pp. 3-6; 21, pp. 1-2]. Plaintiffs therefore allege that Carnival was negligent both in selecting the API surfaces for use on the Lido deck in the first place and for negligently maintaining the Lido deck once the API surfaces were installed and after Carnival allegedly learned of the surfaces' inherent hazards. [ECF No. 1, pp. 6-11]. Plaintiffs' Complaint also includes a claim for punitive damages based on these facts. [*Id.*; ECF No. 21, p. 3]. Carnival answered the complaint and denied Plaintiffs' allegations. [ECF No. 11].

**B.  The Motion to Compel**

Plaintiffs filed their motion on October 30, 2013. [ECF No. 21]. After Carnival filed its response [ECF No. 23], the Undersigned scheduled a hearing on the motion for December 17, 2013. [ECF No. 24]. Given the number of last-minute filings in advance of the December 17 hearing, however, the Undersigned rescheduled the substantive discovery hearing and used the December 17 hearing to frame and streamline the issues to be addressed. [ECF Nos. 32; 33].

The discovery hearing was then held on January 10, 2014. [ECF No. 39]. Following the hearing, the Undersigned entered an order requiring Carnival to provide supplemental memoranda on a number of issues raised at the hearing. [ECF No. 40]. Carnival filed the requested memoranda [ECF Nos. 41; 43; 44; 45; 46], and Plaintiffs filed a limited response [ECF No. 47].

## II.     THE DISCOVERY ISSUES RAISED BY THE PARTIES

There are several themes which are common to many of the particular discovery requests at issue, so the Undersigned will discuss these general categories of disputes before pinpointing how their resolution impacts the specific written discovery requests.

### A.  Whether incident reports are protected by the work product doctrine

Courts in this District have reached differing outcomes on the issue of whether incident reports created by cruise ship operators are protected by the work product doctrine.[2] The Undersigned, however, has previously (and in more than one case) concluded that incident reports <u>are</u> protected by the work product doctrine, assuming that the defendant cruise ship operator submits the requisite affidavit. *See, e.g., Frasca v. NCL (Bahamas) Ltd.*, No. 12-20662, ECF No. 52 (Feb. 21, 2013); *Gentry v. Carnival Corp.*, No. 11-21580, ECF No. 53 (May 8, 2012).

Having heard from the parties and having reviewed the record, including the affidavit of Suzanne Brown Vazquez (Carnival's Director of Guest Claims and Litigation Counsel), I see no reason to reach a different conclusion in this case. As Ms. Vazquez's affidavit states, the incident reports are not prepared for *every* reported

---

[2]     *Compare Lobegeiger v. Royal Caribbean Cruises, Ltd.*, No. 11-21620-CIV, 2012 WL 760857 (S.D. Fla. Mar. 7 2012) *and Bridgewater v. Carnival Corp.*, 286 F.R.D. 636 (S.D. Fla. 2011), *with Eisenberg v. Carnival Corp.*, No. 07-22058-CIV, 2008 WL 2946029 (S.D. Fla. July 7, 2008) *and Alexander v. Carnival Corp.*, 238 F.R.D. 318 (S.D. Fla. 2006).

incident occurring on a Carnival vessel. Rather, they are only prepared "[w]hen a passenger reports an incident resulting in injury which requires treatment beyond basic first aid," because, in Carnival's experience, those incidents typically result in litigation. [ECF No. 26-1, p. 2]. The incident reports are then provided to Carnival's counsel. [*Id.*]. In this case, Ms. Vazquez explains, the incident report "was created to assist Carnival Cruise Lines' claims department and defense counsel in anticipation of litigation," because Carnival believed that litigation was likely to ensue "[i]n light of how the incident occurred and the nature of the medical care provided." [*Id.*].

### B.  Unilaterally redacting non-privileged documents based on relevancy

Carnival produced several documents in redacted form. Carnival did not file a motion for a protective order to obtain leave of court to redact information from responsive documents. Nor did it obtain Plaintiffs' consent to redact portions of the documents. And the redacted information is not subject to a privilege claim.

These unilaterally-imposed redactions, Carnival says, are based on its objections to the relevance and scope of Plaintiffs' requests. Plaintiffs object to Carnival's unilateral redacting, but Carnival insists that "a majority of federal court decisions . . . support the unilateral redaction of documents on the grounds of relevance." [ECF No. 43, p. 3].

As Carnival points out, many courts, including one other court in this District, have found redaction to be an appropriate means to challenge relevance.[3] But the Undersigned's review of the case law, however, reveals that there is far from a consensus on this issue. Indeed, it appears as though there is virtually an even split on this issue, so it is a stretch to say that a "majority" of courts permit the unilateral redaction of responsive documents based solely on the producing party's opinion that the removed information is not relevant for discovery purposes.

*In re Medeva Securities Litigation*,[4] for example, highlights the practical difficulties Carnival's position creates. The court there noted that the unilateral editing of documents "frequently gives rise to suspicion that relevant material harmful to the producing party has been obscured," and that it also "tends to make documents confusing or difficult to use." 1995 WL 943468, at *3. All too often, this "results in litigation of collateral issues and *in camera* review of documents by the Court, with the result that the time of both counsel and the Court is wasted." *Id.*; *accord Beverage Distribs., Inc. v. Miller Brewing Co.*, Nos. 2:08-CV-827, et al., 2010 WL 1727640, at *4 (S.D.

---

[3]     *See, e.g., Drossin v. Nat'l Action Fin. Servs., Inc.*, No. 07-61873-CIV, 2008 WL 5381815 (S.D. Fla. Dec. 19, 2008); *Bear Creek Cranberry Co., LLC v. Cliffstar Corp.*, No. 10-CV-00770, 2011 WL 2882078 (W.D.N.Y. July 15, 2011); *In re Yasmin and Yaz (Drospirenone) Mktg.*, No. 3:09-md-02100-DRH-PMF, 2010 WL 3780798 (S.D. Ill. Sept. 22, 2010); *Abbot v. Lockheed Martin Corp.*, No. 06-cv-0701 MJR, 2009 WL 511866 (S.D. Ill. Feb. 27, 2009); *Spano v. Boeing Co.*, No. 3:06-cv-00743-DRH-DGW, 2008 WL 1174460 (S.D. Ill. Apr. 16, 2008); *Gates v. Rohm and Haas Co.*, No. 06-1743, 2007 WL 295416 (E.D. Pa. Jan. 29, 2007).

[4]     No. 93-4376-KN AJWX, 1995 WL 943468 (C.D. Cal. May 30, 1995).

6

Ohio Apr. 28, 2010) (court should not be burdened with *in camera* inspection merely to confirm relevance or lack thereof of redacted information). Indeed, "[i]t is a rare document that contains **only** relevant information," and disfavoring unilateral redaction "is the only interpretation of Fed. R. Civ. P. 34 that yields 'just, speedy, and inexpensive determination[s] of every action and proceeding.'" *Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011) (internal citation omitted) (emphasis added).

Unilaterally redacting produced documents is also inconsistent with Federal Rule of Civil Procedure 26's overarching purpose of permitting broad discovery. Rule 26(b)(1) specifically provides that "[r]elevant information *need not be admissible* at the trial if the discovery appears reasonably calculated to *lead to* the discovery of admissible evidence." (emphasis added). The rule contemplates that discoverable evidence may ultimately not be admissible at trial, but nonetheless permits its discovery anyway.

Similarly, Federal Rule of Civil Procedure 34 concerns the production of *documents*, not "individual pictures, graphics, paragraphs, sentences, or words within those documents." *Bartholomew*, 278 F.R.D. at 451-52; *see also Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, No. 2:05-cv-555, 2008 WL 4462301, at *2 (W.D. Pa. Sept. 30, 2008) (rejecting defendants' "novel interpretation of their discovery obligations" and noting that Rule 34 requires documents to be produced in a form or forms in which they are ordinarily maintained).

That fact that Federal Rule of Civil Procedure 5.2 -- which provides when redaction is required for court filings[5] -- does not provide for redaction of otherwise responsive and discoverable documents further supports this conclusion. *See Evon v. Law Offices of Sidney Mickell*, No. S-09-0760, 2010 WL 455476 (E.D. Cal. Feb. 3, 2010) ("[t]he Federal Rules sanction only very limited unilateral redaction," and outside of those limited circumstances a party should not take it upon itself "to decide unilaterally what context is necessary . . . and what might be useless to the case").

Based on the above, the Undersigned concludes that the better, less-risky approach is to not provide litigants with the *carte blanche* right to willy-nilly redact information from otherwise responsive documents in the absence of privilege, merely because the producing party concludes on its own that some words, phrases, or paragraphs are somehow not relevant. Thus, Carnival <u>cannot</u> unilaterally redact portions of otherwise discoverable, non-privileged documents based on its own belief that portions of the documents are irrelevant to the claims in this case.[6]

---

[5] Rule 5.2(a) requires, unless the court orders otherwise, the redaction of certain social security number information, information about an individual's birth date, information about a minor, and information about a financial account number. Section (e) provides for the entry of a protective order requiring redaction of additional information.

[6] The Undersigned is not concluding that a party can never produce responsive documents in response to a document request in redacted form on the ground of a purported lack of relevance. First, the requesting party may agree to the less-than-complete production. Second, a court may permit it. But, as noted, Carnival neither obtained permission from Plaintiffs nor sought a protective order.

8

### C.  Scope of time and place

Many of Plaintiffs' discovery requests seek documents dating as far back as five years before the subject incident, which occurred on September 11, 2012, and some even demand discovery relating to "any" time. Carnival's objections to scope are based on the fact that the *Pride's* Lido deck was refinished in November 2010. Therefore, Carnival argues, any documents or other information preceding the Lido deck's refinishing are overly broad and irrelevant, because "the slip resistance properties of the prior flooring surface completely differ from the refurbished surface." [ECF No. 36, p. 8]. Carnival has argued in the alternative, however, that if the Undersigned were to permit discovery of information preceding the Lido deck's refurbishment, then the shorter time period of three years preceding the subject incident would be reasonable.

The parties have yet to agree on exactly where the incident in this case occurred, or likewise, exactly which portions of the *Pride's* Lido deck were refinished in 2010. Carnival concedes that not all portions of the Lido deck were refinished or refurbished. Therefore, it is possible that the area where Phoenix slipped is not one which was refurbished. The Undersigned therefore concludes that it would be unfair to impose the date of refurbishing as the absolute cutoff point for discovery and preclude discovery predating the refinishing. Therefore, some broader time period for relevant discovery is appropriate, but such discovery will be limited to <u>three</u> years before and <u>one</u> year after the September 11, 2012 incident. This timeframe is consistent with generally-accepted

timeframes in this District. *See, e.g., Sorrels v. NCL (Bahamas) Ltd.*, No. 13-21413-CIV, 2013 WL 3838091, at *2 (S.D. Fla. July 24, 2013); *Belik v. Carlson Travel Grp., Inc.*, No. 11-21136-CIV, 2011 WL 4963950, at *4 (S.D. Fla. Oct. 17, 2011).

Concerning the appropriate scope of place, Plaintiffs seek fleet-wide discovery of incident reports and other related information. Carnival's position, naturally, reflects the opposite extreme: discovery "should be limited to information regarding other substantially similar slip and fall incidents that occurred on the Pride's Lido deck in the area near the ping pong tables." [ECF No. 36, p. 10].

The Undersigned concludes that discovery shall be limited to other ships in Carnival's fleet which contain the same API surface materials on their Lido decks as the API surface materials on the *Pride's* Lido deck. Carnival's responses [ECF Nos. 41; 45; 46] to the Undersigned's Order on post-hearing submissions [ECF No. 40] disclosed that a total of fifteen ships in its fleet meet this criteria.[7]

### D. The "self-critical analysis" privilege

The self-critical analysis privilege "has been recognized by some courts, but never fully embraced by courts in our district or circuit." *Hill v. Celebrity Cruises, Inc.*,

---

[7]      Those ships are the *Legend, Sensation, Triumph, Victory, Dream, Conquest, Splendor, Valor, Freedom, Magic, Breeze, Sunshine, Spirit, Imagination,* and *Miracle.* Carnival explained that the API flooring surface material used in the drydock of the Lido Deck of the *Pride* is called "Flexigel Decoro." The 15 ships listed here all have API Flexigel Decoro installed as a flooring surface material on some portion of their Lido Decks, according to Carnival's post-hearing notices of compliance. [ECF Nos. 41; 45; 46].

No. 09–23815-CIV, 2010 WL 5419006, at *2 (S.D. Fla. Dec. 23, 2010); *see also Jones v. Carnival Corp.*, No. 04-20407-CIV, ECF No. 136 (S.D. Fla. Sept. 27, 2005) ("the Eleventh Circuit has yet to recognize the self-critical analysis privilege"). The Federal Rules do not recognize the privilege, either. *Hill,* 2010 WL 5419006, at *2.

The Undersigned rejects Carnival's invitation to apply the self-critical analysis privilege in this case. Neither party was able to present a case from this Circuit recognizing this privilege, and the Undersigned could not find one, either. *Cf. Berner v. Carnival Corp.*, No. 08-22569-CIV, 2009 WL 982621, at *1 (S.D. Fla. Apr. 10, 2009) (commenting that more circuits have rejected the self-critical analysis privilege than accepted it, and that "there is no Eleventh Circuit decision regarding same"). Even the court in *In re Air Crash Near Cali, Colombia,*[8] which Carnival claims "protected similar documents from production" [ECF No. 36, p. 4], explicitly concluded that it was "unpersuaded that the self-critical analysis privilege applie[d]" to the facts before it. 959 F. Supp. at 1532. In fact, Carnival itself seemed to retreat from its position at the discovery hearing, acknowledging now that the DuPont Report it objects to producing would be better categorized as being protected by the work product doctrine, rather than by the self-critical analysis privilege.

---

[8]     959 F. Supp. 1529 (S.D. Fla. 1997).

### E.  Carnival's "red dot/blue dot" diagram

Carnival uses what it calls a "red dot/blue dot" diagram as an accident tracking tool to track the locations where passenger and crew accidents occur. In its pre-hearing memorandum, Carnival asserted that this diagram is protected by the self-critical analysis privilege [ECF No. 36, pp. 12-13], but, as discussed above, the Undersigned has declined to recognize the self-critical analysis privilege in this case. Nonetheless, the diagram was created at the direction of Carnival's counsel and is based on the information contained in Carnival's privileged incident reports [ECF No. 26-1, p. 2], which the Undersigned has concluded are protected by the work product doctrine. The Undersigned therefore concludes that Carnival shall produce the red dot/blue dot diagram, but only in a limited manner. Specifically, the diagram shall indicate *where* on the *Pride* incidents have occurred, but Carnival may redact any narrative information in the diagram which is taken from protected incident reports.

### F.  The DuPont Report

Carnival has also objected to the production of its DuPont report, which contains information relating to Carnival's retention of DuPont's consultation services in an effort to curb litigation. The report concerns the materials on the deck. It is Carnival's burden to show that the information it seeks to withhold is subject to a privilege. *See Place St. Michel, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 06-21817-CIV, 2007 WL 1059561, at *3 (S.D. Fla. Apr. 4, 2007) ("the burden is always on the party withholding

discovery to show the documents should be afforded immunity"). Carnival has not carried its burden on this issue.

In response to the Undersigned's post-hearing Order [ECF No. 42], Carnival withdrew from the argument it made at the discovery hearing,[9] and explained that its consultation with DuPont was both related to two *then-existing* lawsuits *and* also aimed at curbing *future* litigation. [ECF No. 44, p. 2]. Carnival advised that its counsel misspoke at the hearing when he advised that the DuPont work did not relate to specific litigation. Therefore, Carnival's post-hearing argument is that the work product doctrine "most certainly applies." [ECF No. 44, p. 2].

But as Plaintiffs point out, the two then-existing lawsuits were a 2002 and a 2003 case, and Ms. Vazquez's supporting affidavit acknowledges that "[s]ubsequent work by DuPont, not related to the two cases . . . was still done for purposes of avoiding claims against Carnival and defending future claims/litigation." [ECF No. 44-1, p.2].

The work product doctrine only applies where "the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Alexander v. Carnival Corp.*, 238 F.R.D. 318, 319 (S.D. Fla. 2006). The fact that DuPont's consultation services continued well beyond the pendency of any then-existing claims leads the Undersigned to conclude that DuPont was not primarily engaged *because of* any specific

---

[9]     At the hearing, Carnival took the position that the work product doctrine does not necessarily need to be tied to a particular claim or lawsuit, but, instead, can apply to undertakings made in an overall general effort to curb or manage litigation in general.

pending litigation, but rather to curb against future litigation as a more general matter. Even if, to use Ms. Vazquez's words, "the prospect of litigation against Carnival is always imminent" [ECF No. 44-1, p. 2], the work product doctrine does not apply "to materials prepared simply because there is a 'general possibility' that litigation will ensue in the future." *Travelers Indem. Co. of Conn. v. Philips Med. Sys. N.A., Inc.*, No. 07-23246-CIV, 2008 WL 2704447, at *3 (S.D. Fla. July 7, 2008) (citing *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992)). Under Carnival's view, **all** documents would be subject to a work product claim, including reports by outside consultants, because the prospect of litigation is "always imminent." The Undersigned cannot accept such a sweeping, all-encompassing view of the work product doctrine.

## III.    THE UNDERSIGNED'S DISCOVERY RULINGS

Based on the above, the Undersigned rules as follows on the items enumerated in Plaintiffs' motion to compel [ECF No. 21, pp. 3-5]:

### A.  Objections to Requests for Production

1. Request Numbers 4, 9, 10, 79, 80, 83, 84, 112

**Denied**. These requests relate to incident reports and similar materials, which are protected by the work product doctrine.

2. Request Numbers 1, 3, 8, 35, 71, 81, 82, 94, 103, 105

**Granted in part and denied in part**. These requests relate to photographs, communications, statements, and other documents, including photographs of the area

14

where the incident occurred and documents containing statements pertaining to Phoenix's treatment. Carnival shall produce the responsive documents, <u>other than</u> incident reports, for the relevant time period, which is three years before the subject incident.

3. <u>Request Number 26</u>

**Granted in part and denied in part**. Carnival shall produce its "red dot/blue dot" diagram as discussed above, as well as printouts from computer systems which provide information on slip and fall accidents on the *Pride* for this accident, for three years before the voyage and for one year after the trip at issue.

4. <u>Request Numbers 21, 27, 77</u>

**Granted in part and denied in part**. These requests relate to *prior* accidents. Carnival shall produce such materials, with the exception of incident reports, which were generated as a result of slip and fall accidents occurring within three years before the subject accident.

5. <u>Request Numbers 28, 31</u>

**Granted in part and denied in part**. These requests relate to *subsequent* accidents and *subsequent* repairs, modifications, refurbishments, etc. Carnival shall produce such documents, with the exception of those materials which are privileged or protected by the work product doctrine, relating from the date of the subject accident to one year after the date of the accident.

15

6.  Request Numbers 32, 33, 34

**Granted in part and denied in part**. These requests relate to repairs, modifications, construction, refurbishment, etc. of flooring surfaces, both before and after the subject incident. Carnival shall produce such documents, other than privileged documents and incident reports, which were generated at any time within three years before the subject accident, and within one year after the subject incident.

7.  Request Numbers 12, 15, 16, 18, 20, 23, 24, 25, 29, 30, 40, 43, 51, 53, 54, 55, 56, 57, 58, 59, 60, 62, 63, 65, 66, 67, 68, 69, 70, 73, 78, 88, 90, 91, 92, 93, 99, 102, 106, 107, 109, 111, 114, 118, 119

**Granted in part and denied in part**. These requests relate to meetings, documents, records, and other non-privileged communications and documents conducted or created pursuant to applicable laws and/or in Carnival's normal course of business. Carnival shall produce these documents in <u>unredacted</u> form. To the extent that scope and relevancy objections may be implicated, the relevant scope of time is from three years before the subject incident to one year after the subject incident.

8.  Request Numbers 76, 85, 86, 87

**Granted**. Carnival shall produce the "iCare" or other current equivalent system information which replaced its CRS system, both for the subject incident and for similar slip and fall incidents occurring within three years before the subject incident.

9.  Request Number 108

**Granted**. Carnival shall produce the DuPont report.

16

10. Request Numbers 110, 113, 115, 116, 117, 120, 121

**Granted in part and denied in part**. Carnival shall produce these API-related documents, subject to the Undersigned's caveat, discussed above, that to the extent that such discovery implicates ships other than the *Pride*, such discovery shall be limited to ships in Carnival's fleet with the same API flooring surface materials on their Lido decks as the *Pride's* Lido deck. As with other materials to be produced, the relevant time period is from three years prior to the subject incident through one year after the subject incident.

11. Request Number 50

**Denied**. Carnival responded to this request by providing the names of the various carriers with which it maintains indemnity policies, and advised that there is "no 'policy' per se" and that it reserved the right to amend its response as circumstances arise.

**B. Objections to Requests for Admissions and Interrogatories**

Most of Carnival's objections to these discovery categories have effectively already been addressed by the above rulings. Nonetheless, to avoid any confusion, the Undersigned will formally rule on them as well.

1. Requests for Admissions Numbers 5, 9, 10, 13, 14

**Granted.** Carnival shall answer these requests for admissions.

2.    Requests for Answers to Interrogatories Numbers 12, 17, 18, 19, 20, 24, 28

**Granted.** Carnival shall answer these interrogatories.

3.    Request for Answer to Interrogatory Number 13

**Granted in part and denied in part.** Carnival shall answer this interrogatory, but the scope of its response shall be limited to group or committee meetings relating to passenger/crew safety, the Lido deck, and flooring materials.

## IV.    CONCLUSION

The Undersigned **grants in part and denies in part** Plaintiffs' motion to compel as set forth above. No attorney's fees or costs will be awarded in connection with this discovery dispute.

**DONE and ORDERED** in Chambers, in Miami, Florida, January 31, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Kathleen M. Williams
All Counsel of Record

18